Hulings et al. *v.* Pittsburgh, Appellant, et al.

Argued May 5, 1942.

Before Keller, P. J., Cunningham, Baldrige, Rhodes, Hirt and Kenworthey, JJ.

*Bennett Rodgers,* with him *Wm. Alvah Stewart,* for appellant.

*Henry Kauffman,* with him *Louis Little,* for appellees.

OPINION BY HIRT, J., September 30, 1942:

The wife-plaintiff was injured by a fall on an icy sidewalk. The jury found for both plaintiffs against the city alone; the other defendants, owners of the property, were not in possession. This appeal questions the refusal of the lower court to enter judgments for defendant city n.o.v. Whether the city is chargeable with negligence, is the issue. The question of contributory negligence, clearly, was for the jury.

Considered wholly from plaintiffs' viewpoint, these facts appear from the testimony: About 9:30 o'clock in the evening of January 4, 1940, "a bitter cold night" the wife, unattended, was returning to her home on Amber Street in the City of Pittsburgh. While walking along the south side of Friendship Avenue "around the corner from her home" she fell and was injured. She was familiar with the neighborhood but had no notice of the condition of the sidewalk. Snow and ice had been allowed to accumulate on the walk. One witness said: "there was always snow and ice on there." Though existing for a long time, this, in itself, does not charge the city with negligence for "a municipality, in general, is not liable for accidents resulting from the icy condition of its streets and sidewalks." General "slipperiness" is not enough unless the accumulations take the shape of "ridges and hills." *Bailey v. Oil City et al.,* 305 Pa. 325, 157 A. 486.

Two witnesses, one of them the husband-plaintiff, testified that, in general, there were ridges of ice on the pavement. Proof of injury alone, or of negligence of a defendant without proof that the negligence caused the injury, cannot establish liability. *Burns v. City of Pittsburgh,* 320 Pa. 92, 181 A. 487. Though there were dangerous ridges of ice on the pavement, unless one of them caused the wife to fall, there can be no recovery, for "negligence is not a ground of recovery

unless a causative factor of the accident": *Davis v. Potter et al.*, 340 Pa. 485, 17 A. 2d 338. And the testimony of the wife coupled with that of the above witnesses does not meet the burden on plaintiffs of identifying a ridge of ice as the cause of the fall, (Cf. *Reddington v. Philadelphia*, 253 Pa. 390, 98 A. 601). When asked: "And what caused you to fall?" she said: "Well, my feet slipped on the ice." That is the extent of her testimony on the subject, with this addition: "I just fell right straight down on my back ...... after I fell I was reaching around ...... and I could feel large ridges and ruts ......" If she fell on the smooth surface of ice on the sidewalk there can be no recovery and she does not say that a ridge of ice caused the fall.

The city is not an insurer of the safety of pedestrians; its duty is no more than to maintain its walks in a reasonably safe condition. This is a heavy burden on a city of the size of Pittsburgh with its thousands of miles of sidewalks; there is a corresponding burden on plaintiffs. One cannot recover unless the testimony identifies a ridge of ice, sufficient to support the charge of negligence as the cause of the injury. "The proof must describe the alleged ridge as to size and character and be such as to support a finding that it was a substantial obstruction to travel": *Kohler v. Penn Township*, 305 Pa. 330, 157 A. 681. The sensation of falling because of a ridge of ice is different from slipping on a smooth icy pavement and if the wife's fall was caused by a ridge of ice she would have known it and would have so testified. We have no desire to penalize her for honest testimony but the ridges which she felt with her hands after she fell on her back do not establish, circumstantially, that one of them was the cause of her fall. We think it clear also that the testimony of the remaining witness Fryer did not carry this question to the jury. He was walking immediately behind Mrs. Hulings on the sidewalk. He said: "It was slippery and particularly the spot where Mrs. Hulings fell,

there was ridges, I would say, about three or four inches deep." The reporter's punctuation, we must assume, is intended to convey the meaning indicated by the witness. His testimony indicates general slipperiness at the place of the fall and ridges of ice on the sidewalk but does not establish a ridge of ice as the cause of it. In the light of this testimony it was "equally probable" that the injury occurred from one of two causes, only one of which could impose liability in the city. Cf. *Mars v. Phila. Rapid Transit Co.,* 303 Pa. 80, 154 A. 290.

More specific testimony was essential in this case, in any view, to charge the city with constructive notice of ridges even if they were the cause of the injury. *Taylor v. Philadelphia,* 138 Pa. Superior Ct. 194, 10 A. 2d 75; *Neistadt v. Philadelphia,* 138 Pa. Superior Ct. 200, 10 A. 2d 77. The duty of reasonable maintenance implies the actual discovery of dangerous conditions of which the city has constructive notice. The procedure thereafter consists in notice to the occupant to clear the pavement; it is the duty of the city, itself, to take steps to remedy the defect only when it is apparent that the occupant will do nothing. The duty of the city is secondary. *Beebe v. Philadelphia,* 312 Pa. 214, 167 A. 570. "Reasonable maintenance", therefore, contemplates a reasonable period of time not only to charge the city with notice but to accomplish a removal of the menace to pedestrians. The statement of the witness Reinheimer that the condition existed "several days anyhow" or for "three or four nights" according to the witness Fryer, is not enough to charge the city with constructive notice. *Beebe v. Philadelphia,* supra. The wife of the latter witness testified to foot marks in the snow "about the depth of a woman's heel" and stated "that it must have been in that condition for a week." This is not positive evidence but rather a conclusion from what she observed. Moreover "the mere uneven surface, caused by walking on

[snow or] ice as it freezes, does not constitute such an obstruction as the law condemns": *Bailey v. Oil City, supra.*

Throughout the winter, up to the time of the accident, a W.P.A. worker had parked his truck in the vacant lot abutting Friendship Avenue in the rear of the corner house and whenever the temperature was below freezing, the driver, at night, was in the habit of draining the radiator. The husband testified that from the marks in the snow he located the spot where his wife fell in the area where the water from the truck flowed across the sidewalk. He said that on the sidewalk *in general* there were ridges which had existed "for a week or so before this accident." Another witness, Gebhart, said that there were ridges on the sidewalk for at least two or three weeks but "just in one spot ...... six feet wide, where the water had drained" across the walk from the radiator of the truck. All of this testimony related to *general* conditions and not to ridges at the place of the fall. Each succeeding draining of the radiator added to the irregularity in the icy surface of the sidewalk. For more than a week the temperature was below freezing and witnesses observed the draining of the radiator within two days of the accident. Any draining of the radiator may have caused ridges. The burden was on plaintiffs not only to identify a dangerous ridge of ice as the cause of the fall, but to prove that it had existed long enough to charge the city with constructive notice. This burden has not been met.

Judgments reversed and directed to be entered for defendant city, n.o.v.

RHODES, J., and KENWORTHEY, J., dissent.