**Yarletts v. C&Z Gymnastics & Cheer Academy, Inc.**

C.P. of Lawrence County, No. 10876 OF 2010.

*Gene G. Dimeo* and *Joseph S. Bellissimo*, for plaintiff.

*Robert J. Grimm* and *Ryan M. Joyce*, for defendants.

COX, *J.*, April 19, 2013—Before the court for disposition is the motion for summary judgment filed on behalf of the defendants C & Z Gymnastics & Cheer Academy Inc., Deborah Caparoula, Terry A. Zarilla and Deborah Caparoula and Terry A. Zarilla d/b/a C & Z Gymnastics & Cheer Academy, which argues that the Plaintiff failed to present evidence to support her claim there was a defective condition of the spring floor and the alleged defective condition caused the plaintiff's injuries. Moreover, the defendants assert that the plaintiff has failed to proffer evidence that the defendants did not provide proper instruction or supervision to its competition cheerleading participants.

The defendants operated a business in which they instructed individuals regarding cheerleading and

gymnastics. The plaintiff Brooke Yarletts participated in Cheer Gym class offered by the defendants for six months when she was approached by a cheerleading instructor employed by the defendants, who asked the plaintiff to participate in competitive cheerleading. She auditioned and was selected for the competitive cheerleading team, which included other participants ranging in age up to 16 or 17 years old. On November 29, 2001, the baser[1] whose responsibility it was to hold the plaintiff during a pyramid stunt quit the team and was replaced by another baser. On the same date, the plaintiff fell while practicing a pyramid stunt at the defendant's facility. As a result of that fall, the plaintiff suffered severe injuries, which included the loss of mobility in her right arm. Since the fall, she had to undergo several surgeries.

The plaintiff initiated suit against the defendants on June 10, 2010, by filing a praecipe for writ of summons. On August 16, 2010, the plaintiff filed a complaint and the defendants filed preliminary objections. Oral argument was scheduled on those preliminary objections, but oral argument was unnecessary as the plaintiff filed her first amended complaint on January 25, 2011. In response, the defendants filed preliminary objections to the plaintiff's first amended complaint. The plaintiff filed her second amended complaint on May 20, 2011, and the defendants filed their answer and new matter to plaintiff's second amended complaint on July 11, 2011.

The defendants filed a motion for summary judgment

---

1. A baser is an individual who is a member of a competitive cheerleading team that remains standing on the floor while lifting another member of the cheerleading team into position for a pyramid stunt.

on May 24, 2012, which raised, among other issues, that the plaintiff failed to provide an adequate expert report to support her claims of negligence concerning the condition of the spring floor[2] or the propriety of supervision of the competition cheerleading team. Oral argument was originally scheduled for July 30, 2012, but the plaintiff filed a motion to continue oral argument, which was granted by the court. Oral argument was then rescheduled for November 26, 2012, and argument occurred on that date. At oral argument, the plaintiff provided the court with the affidavit of M. Gemma Fotia, who the plaintiff retained as an expert. However, that affidavit merely contained Ms. Fotia's qualifications, but lacked a report regarding liability. On December 13, 2012, the court granted the plaintiff 30 days to file an expert report and the parties were provided with an opportunity to supplement their original briefs. The plaintiff then filed Ms. Fotia's expert narrative report and opinion on January 9, 2013. In response, the defendants filed a supplemental brief in support of motion for summary judgment on January 25, 2013, which argued that the plaintiff failed to provide evidentiary support for her assertion that her injuries were caused by a defective condition of the defendants' spring floor. The defendants also requested oral argument regarding that supplemental brief. On March 5, 2013, the plaintiff filed a supplemental brief in opposition to defendants' motion for summary judgment. This court held the second oral argument requested by the defendants on March 25, 2013.

---

2. A spring floor, as described by Terry Zarilla, contains 4 x 4 foam blocks covered with two layers of wood that are interlocking and glued to specific locations and covered with a two inch foam mat which is placed on top of the wood.

The expert narrative report and opinion issued by Ms. Fotia stated that she is a licensed and certified cheerleading coach, cheerleading safety instructor and advisor. She remains a practicing cheerleading coach and has served as such for 25 years on various levels. She has coached cheerleading at Slippery Rock University of Pennsylvania for 20 years. Moreover, she has been a judge for the National High School and All-Star Cheerleading Championships in Orlando, Florida. Ms. Fotia explained that competitive cheerleading includes an intense cheering regimen of stunts and tumbling that requires a higher level of physical fitness and a higher risk of injury. In addition, Ms. Fotia opined that the plaintiff only had a novice skill level at the time she entered competitive cheerleading and she required "hands-on" spotting and progressive teaching methods as set forth by the American Association of Cheerleading Coaches & Administrators' Manual. She stated that the defendants or their employees did not utilize those mandatory standardized practices when instructing the plaintiff. Moreover, Ms. Fotia explained that the plaintiff was also being supported by a new baser who did not receive the proper training which would have aided in avoiding a fall. She further opined that basic skills were not taught to the plaintiff, such as the "step-up" drill which should have been performed before attempting any type of stunt. Ms. Fotia stated that there is nothing in the record indicating proper spotting techniques were taught to team participants. She explained that the record indicated the spring floor was inspected annually, which is, in her opinion, "completely inadequate". Ms. Fotia believed that the spring floor should be inspected on a bi-weekly basis to assure that it is functioning properly because a failure to

do so could result in injury to the participants. She insisted that the spring floor is inspected for safety purposes at each break of a typical cheerleading competition. Ms. Fotia stated that she observed those aforementioned risks and dangers when she was employed by the defendants. Hence, Ms. Fotia opined, "[E]ach of the discussed risks of harm and negligence of the defendants singularly or a combination of everything stated above was a substantial factor in bringing about the harm and injuries suffered by the plaintiff, Brooke Yarletts on November 29, 2001."

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa. Super. 2000). The mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. The summary judgment rule exists to dispense with a trial of a case or, in some matters, issues in a case, where a party lacks the beginnings of evidence to establish or contest a material issue. *Ertel v. Patriot-News Company*, 544 Pa. 93, 674 A.2d 1038 (1996), reargument denied, (1996), certiorari denied, 519 U.S. 1008 (1996).

Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce

evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2. However, summary judgment is only appropriate when discovery relevant to the motion has been completed. *Id.* Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa. Super. 2000) (citing *Rush v. Philadelphia Newspaper, Inc.*, 732 A.2d 648, 650-651 (Pa. Super. 1999)).

The moving party bears the burden of proving the non-existence of any genuine issue of material fact. *Kafando, supra.* A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Shincor Silicones, Inc.*, 756 A.2d 697 (Pa. Super. 2000); *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa. Super. 2000). The non-moving party must adduce sufficient evidence on issues essential to his case on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ertel, supra.* The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. *DeSantis v. Frick Company*, 745 A.2d 624 (Pa. Super. 1999); *Merriweather v. Philadelphia Newspaper, Inc.*, 453 Pa.Super. 464, 469-472, 684 A.2d 137, 140 (1996).

When determining whether to grant a motion for

summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 752 A.2d 339 (2000); *Dean v. Commonwealth Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n*, 555 Pa. 149, 153, 723 A.2d 174, 175 (1999); *Basile v. H&R Block*, 761 A.2d 1115 (Pa. Super. 20001); *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa. Super.2000); *Stevens Painton Corporation v. First State Insurance Company*, 746 A.2d 649 (Pa. Super. 2000).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Basile, supra.* If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be granted. *Dudley v. USX Corporation*, 414 Pa. Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa. Super. 2001). The trial court must confine its inquiry when confronted with a motion

for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore*, 152 Pa. Cmwlth. 540, 620 A.2d 76(1993). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

First, the defendants contend that the plaintiff has failed to present evidence to support her claims there was a defective condition of the spring floor and that defective condition caused the plaintiff's injuries.

A possessor of land owes a duty to protect a business invitee from foreseeable harm. *Carrender v. Fitterer*, 503 Pa. 178, 185, 469 A.2d 120, 123 (1983) (citing Restatement (Second) of Torts §§341A, 343 & 343A). A possessor of land is subject to liability for conditions he or she knew about only if he or she: "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." *Id.* (quoting Restatement (Second) of Torts §343. A possessor of land who permits a business invitee onto his or her property retains a duty to not only ensure that he or she will not create a dangerous condition on the land, but must also inspect the premises to make certain that the property is in a reasonably safe condition for use in the manner consistent with the purpose of the invitation. *Treadway v. Ebert Motor Co.*, 292 Pa. Super. 41, 49, 436 A.2d 994,

998 (1981) (citation omitted). "The occupier's duty is one of due care under all the circumstances. That duty includes the duty to inspect the premises and to discover dangerous conditions." *Id.*, 292 Pa. Super. at 50, 436 A.2d at 998 (citing *Durning v. Hyman*, 286 Pa. 376, 133 A. 568 (1926)). Certain circumstances could give rise to a heightened duty to inspect the premises beyond a visual inspection, such as the owner of a swimming pool with a diving board may be required to physically inspect the durability of the diving board to ensure its safety prior to conducting a lifeguarding course on the premises because the use of the premises involves a greater likelihood of injury. *Starke v. Long*, 221 Pa. Super. 338, 342, 292 A.2d 440, 443 (1972).

Furthermore, a possessor of land is only liable for injuries that the plaintiff can demonstrate were caused by the condition of the premises. *Rogers v. Binkham*, 200 Pa. Super. 312, 315, 188 A.2d 821, 822 (1963) (citing *Radies v. Reading Liederkranz German Singing & Sport Society*, 197 Pa. Super. 509, 178 A.2d 789 (1962)). Merely demonstrating that an accident and injury occurred does not prove negligence, the plaintiff bears the burden of demonstrating that the defendant's negligence actually caused the plaintiffs injuries. *Id.* (citing *Davies v. McDowell National Bank*, 407 Pa. 209, 180 A.2d 21(1962)).

In *Houston v. Republican Athletic Ass'n*, 343 Pa. 218, 22 A.2d 715 (1941), the appellant filed suit seeking damages for the death of her husband caused by a fatal fall as he was descending the stairs leading to the first floor club room of the appellee's facility. The appellant argued that the fall, which was not witnessed by anyone, was caused

by a sliver of wood 3 to 5 inches long on the edge of a step, which caught the decedent's foot. At the close of the appellant's evidence at trial, the court issued a compulsory nonsuit because the appellant failed to demonstrate that the decedent's fall was caused by a defective condition of the appellee's stairs. The appellant then filed an appeal, which was eventually addressed by the Pennsylvania Supreme Court. The *Houston* Court reasoned that the appellant was required to demonstrate that the injuries complained of were the result of the appellee's negligence. *Id.*, 343 Pa. at 220, 22 A.2d at 716 (citations omitted). Even though the appellant set forth a hypothesis as to what she believed happened there is no evidence to demonstrate that the decedent's fatal injuries were caused by the appellee's negligence as the evidence was just as consistent with the theory that the decedent tripped or stumbled. *Id.*, 343 Pa. at 221, 22 A.2d at 716. The court then stated, "Under these circumstances, a finding that the fatal injuries of the appellant's husband resulted from the negligence alleged would, at most, represent nothing but a mere guess or conjecture; hence a verdict for appellant could not be sustained." *Id.* Thus, the *Houston* court held that the appellant failed to present sufficient evidence to establish that the decedent's injuries were caused by the negligence of the appellee. *Id.*

In the current case, the plaintiff indicated in her deposition testimony that there may have been a problem with the spring floor because she fell on the padded portion and still injured her elbow. Moreover, in her deposition, defendant Terry A. Zarilla testified that she assembled the spring floor along with defendant Deborah Caparoula, John Caparoula and, her husband, Jim Zarilla. Defendant

Zarilla indicated that they never installed a spring floor prior to installing the spring floor at C & Z Gymnastics and Cheerleading Academy. However, she stated that they installed the floor in accordance with the specifications of USA Gymnastics and the manufacturer. Defendant Zarilla also explained that she inspected the floor after installation along with defendant Caparoula, Mr. Caparoula and Mr. Zarilla. She indicated that the spring floor was examined every day to determine if anything was loose or not in normal working order. Every year the defendants close the gym for a week for maintenance on the floor. She also explained that an inspection would reveal any problem with the spring floor because it could be felt by walking on the faulty portion. The plaintiff provided the court with the expert report of M. Gemma Fotia, who has 25 years of experience as a cheerleading advisor. Ms. Fotia explained that inspecting the spring floor once a year was inadequate and it should be inspected on a bi-weekly basis to ensure that it is safe and functioning properly. In her opinion, a failure to do so would create a high risk of injury.

The evidence currently before the court fails to set forth an issue of material fact concerning the condition of the spring floor and its alleged contribution to the plaintiffs injuries. There is no testimony that there was an actual defect in the spring floor other than the plaintiff's assertion that she was injured after falling onto the floor. The only testimony provided to the court indicates that the floor was installed in accordance with the specification of the USA Gymnastics and the manufacturer. Moreover, defendant Zarilla explained that the floor was inspected every day after installation to make certain that it was in the proper condition for gymnastic and cheerleading activities. The

facility is closed once a year for a week to thoroughly inspect and perform maintenance on the spring floor. In addition, defendant Zarilla indicated that it would have been noticeable during the daily inspections if there was a problem with the spring floor. The Defendants did not notice any defects upon their inspections. As such, there is no indication that the Defendants had notice of an alleged defective condition. This extensive routine of inspecting the spring floor meets the standards set forth in *Starke* for inspecting premises used for activities involving a greater risk of harm. Furthermore, there is no testimony or evidence that any alleged defect in the floor actually caused the plaintiff's injuries. Ms. Fotia merely asserted that the lack of proper inspection could cause a dangerous condition to occur; however, she did not state that a defect actually existed on the floor to cause the injuries suffered by the plaintiff. Therefore, the court grants the defendants' motion for summary judgment regarding any claims averred by the plaintiff that her injuries were caused by a defective condition of the defendants' spring floor.

Next, the defendants argue that the plaintiff has failed to provide sufficient evidence to support her claim that her fall and injuries were caused by a lack of proper supervision by the defendants or their employees.

In order to establish a claim for negligence, a plaintiff must prove the following elements: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1126 (Pa. Super. 2004)

(citing *Burman v. Golay & Co., Inc.*, 420 Pa. Super. 209, 616 A.2d 657 (1992)). In *Rutter v. Northeastern Beaver County School Dist.*, 496 Pa. 590, 437 A.2d 1198 (1981), the appellant was injured while participating in a game of "jungle football[3]" which was encouraged by the high school football coaching staff, who also participated in the game. The appellant filed suit against the school district and high school football coaches for a failure to supervise the "jungle football" game. The case proceeded to trial and at the close of the appellant's case a compulsory nonsuit was granted after the trial court refused to admit the testimony of the appellant's expert, who was a former football coach and was willing to state that the football coaches' practices were not in conformity with the rules promulgated by the Western Pennsylvania Interscholastic Athletic League. The appellant filed an appeal which was denied by the Superior Court of Pennsylvania. The Supreme Court of Pennsylvania granted allocatur and reversed the decisions of the lower courts. The *Rutter* court indicated that the expert testimony should have been admitted at trial to explain the customs and safety standards of high school football teams. *Id.*, 496 Pa. at 598, 437 A.2d at 1202. Moreover, the court determined that there was sufficient evidence to permit a jury to decide the issue of liability by stating, "[A] 'touch' football game in which tackling and body blocking occurs, which is initiated and supervised by the football coaches, in which no equipment is used, and which is played by team members attempting

_____
3. This is a variation of the popular game of two-handed touch football in which the ball carriers could throw any number of laterals or forward passes regardless of their position on the field in relation to the line of scrimmage. There is no equipment worn during "jungle football" games.

to impress coaches who are themselves engaged in the game, may be said to at least present a jury question as to the dangerousness of the game and the negligence of the coaches." *Id.*, 496 Pa. at 599, 437 A.2d at 1202. Therefore, the court reversed the decisions of the trial court and the Superior Court and remanded the case to the trial court. *Id.*

In the current case, the plaintiff was injured while participating in competitive cheerleading practice after falling from a pyramid stunt. She filed suit claiming that the defendants were liable for failing to properly instruct and supervise her progression when introducing more difficult cheerleading skills. In response, the defendants filed a motion for summary judgment asserting that the plaintiff failed to present sufficient evidence to support that claim because she did not provide an expert report regarding the alleged improper instruction and supervision. The plaintiff then provided the affidavit of M. Gemma Fotia during oral argument, but that did not contain an explanation as to whether the defendant was liable for the plaintiff's injuries. The court granted the plaintiff an opportunity to file an expert report explaining the expert's opinion concerning those issues. The Plaintiff subsequently filed the expert narrative report and opinion written by Ms. Fotia, in which she explained that the defendants were negligent in failing to utilize a "hands-on" spotting technique and progressive teaching methods as set forth by the American Association of Cheerleading Coaches & Administrators' Manual. Ms. Fotia also stated that the defendants did not utilize those mandatory standardized practices when instructing the plaintiff. She explained that the defendants were negligent in failing to properly instruct the plaintiff's new baser. Ms.

Fotia also opined that basic skills were not taught to the plaintiff, such as the "step-up" drill which should have been performed before attempting any type of stunt.

This case is similar to *Rutter*, in which the court decided that the expert testimony provided sufficient evidence to create a question of fact concerning whether the coaches properly supervised or monitored the "jungle football" game that resulted in the appellant's injury. In the current matter, the expert narrative report and opinion authored by Ms. Fotia creates a question of fact as to whether the plaintiff was properly supervised and instructed while participating in competitive cheerleading, more specifically, when she was attempting to perform the pyramid stunt with a new baser and she fell causing her injuries. Furthermore, Ms. Fotia's report creates an issue of fact as to whether the defendants instituted the proper "hands-on" spotting technique and progressive teaching methods set forth by the American Association of Cheerleading Coaches & Administrators' Manual when instructing the plaintiff. It is apparent that the plaintiff has presented evidence to support her claims of negligent instruction and supervision as the expert testimony indicates the defendants breached their duty of care by failing to utilize the "hands on" spotting technique and progressive teaching methods. Hence, the plaintiff has presented sufficient evidence to create a question of material fact regarding the issue of whether the defendants negligently instructed and supervised the plaintiff's participation in competitive cheerleading.

For the reasons set forth in this opinion, the defendants' motion for summary judgment is granted in part and denied in part. The court grants the defendants' motion for

summary judgment concerning the plaintiffs averments that the spring floor contained a defective condition which caused her injuries. However, the court denies the motion for summary judgment regarding all claims that the defendants negligently advised, supervised or instructed the plaintiff and her baser on the proper techniques of cheerleading and performing a pyramid stunt.

## ORDER OF COURT

Now this, April 19, 2013, this case being before the court on November 26, 2012, and March 25, 2013, for oral argument on the motion for summary judgment filed by the defendants, with both parties appearing through their counsel, the plaintiff represented through counsel, Gene G. Dimeo, Esquire and Joseph S. Bellissimo, Esquire and the defendants represented through counsel, Robert J. Grimm, Esquire and Ryan M. Joyce, Esquire and after a consideration of the arguments and briefs presented and submitted by counsel and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. In accordance with the attached opinion, the motion for summary judgment is hereby granted in part and denied in part.

2. The motion for summary judgment is hereby granted in part and paragraphs 9a, b, c, d, e, f, g, and those portions of k, l, m, o, p, q, t and u as they relate to any allegations involving a defective condition in the spring floor, of the second amended complaint filed by the plaintiff are hereby dismissed with prejudice. It is the intention of the court that all claims of the plaintiff that the spring floor

contained a defective condition which caused the injuries suffered by the plaintiff are dismissed.

3. The motion for summary judgment as to the remaining claims that the defendant's negligently advised, supervised and instructed the plaintiff is hereby denied.

4. The prothonotary is directed to serve a copy of this order of court upon counsel of record.